## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JEANNETTE E. HOLLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-104-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

The claimant Jeannette E. Holland requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Court finds that the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also* *Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 30, 1988, and she was twenty years old at the time of the administrative hearing. She has a ninth grade education and no past relevant work (Tr. 19, 26). The claimant alleges that she has been unable to work since December 30, 1988 (with an amended onset date of December 28, 2007), because of social phobia, panic disorder, and anxiety disorder (Tr. 124).

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 28, 2007. The Commissioner denied her application. ALJ Eleanor T. Moser held an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 4, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), but that due to mental limitations, the claimant would be capable of understanding, remembering, and performing simple and repetitive tasks with routine supervision and relating to supervisors and coworkers on a superficial basis

but not relating to the general public (Tr. 14).  While the claimant has no past relevant work, the ALJ found that there was work the claimant could perform in the national economy, *i. e.*, laundry classifier, bottling line attendant, and silver wrapper (Tr. 20). Thus, the ALJ concluded that the claimant was not disabled (Tr. 20).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the treating physician opinion of Dr. Vergil Smith; ii) by ignoring probative evidence that conflicted with her findings; and (iii) by failing to properly analyze the claimant's RFC at step four.  The Court agrees with the claimant's first contention.

At the claimant's initial evaluation with Dr. Todd K. Pogue, D.O. on March 6, 2007, it was noted that she was having difficulty dealing with social situations, as she felt shaky, sweaty, and afraid that people were judging her (Tr. 282).  The diagnoses at that time was agoraphobia with panic disorder and social phobia, she was prescribed Prozac and Vistaril, and her GAF was 60 (Tr. 287).  On March 31, 2007, the claimant presented at Mercy Memorial Health Center's emergency room complaining of sharp chest pain and a racing heart (Tr. 327).  The diagnostic impression was acute anxiety and history of tachycardia (Tr. 328).  On April 9, 2007, the claimant again presented at the emergency room complaining of a persistent headache, nausea, photophobia, phonophobia, scotomata, and dizziness (Tr. 333).

The claimant received treatment for her anxiety and panic disorder at Mercy Memorial Health Center as early as December 2005.  Dr. Larry Powell's treatment notes

-4-

from January 2007 noted that claimant "has very severe social phobia and talks barely above a whisper" and that he thought the claimant was "a very troubled young lady" and that her "social phobia [was] just the tip of the iceberg" (Tr. 421). His treatment notes from April 9, 2007 again noted that the claimant "has a very [quiet] voice . . . you can barely understand what she is saying" (Tr. 409). In addition, it was noted that she has "episodes of not being able to follow her own conversations" (Tr. 409).

State reviewing physician Dr. Carolyn Goodrich, Ph.D., completed a Psychiatric Review Technique (PRT) on August 8, 2007 (Tr. 347-63). Dr. Goodrich found that claimant suffered from anxiety-related disorders characterized by the following symptoms: i) a persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation and ii) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week (Tr. 352). As a result, Dr. Goodrich went on to find that claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace (Tr. 357). Finally, Dr. Goodrich opined that claimant was markedly limited in her ability to interact appropriately with the general public (Tr. 362).

On April 10, 2008, Dr. Goodrich completed another PRT in which she opined that claimant had borderline intellectual functioning resulting in mild limitations in activities of daily living and moderate limitations in both social functioning and maintaining

concentration, persistence, and pace (Tr. 567-77). As a result, Dr. Goodrich found that claimant was markedly limited in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public (Tr. 581-82). Dr. Goodrich wrote that the claimant's "social skills are noted to be normal" and limited her to simple one- and two-step tasks, superficial contact with others, and no contact with the general public (Tr. 583).

The claimant has received treatment from Dr. Vergil D. Smith, D.O. since approximately September 2007. On March 13, 2008, Dr. Smith noted that claimant "has about the worst case of . . . agoraphobia, panic disorder" he had ever seen and has had no effective treatment (Tr. 809). Six days later he noted again that claimant had "about the worst introverted agoraphobic condition that [he had] ever seen" (Tr. 808). On April 10, 2008, Dr. Smith wrote that Xanax would "get her as near straightened out as we can" and the claimant noted that she was better (Tr. 804). Dr. Smith submitted a letter on September 14, 2009, in which he stated that she has "a severe disorder of agoraphobia manifested by frequent panic attacks and continued anxiety" (Tr. 918). Dr. Smith noted that it was difficult to treat the claimant because she gives simple yes/no answers to questions and will not expound on any subject (Tr. 919). Dr. Smith wrote that claimant "seems to be totally unemployable and seemingly unproductive in any way" (Tr. 919).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"

*See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927.  *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300.  The pertinent factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ gave "some, but not great weight and consideration" to Dr. Smith's treating physician opinion, because the ALJ found that the opinion was not consistent with his own treatment notes and "Dr. Smith did not provide any opinion concerning specific functional limitations" (Tr. 18).   The ALJ's analysis is flawed for several reasons.

First, the ALJ wholly failed to apply the *Watkins* factors to Dr. Smith's opinion. *Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.   The ALJ also ignored probative evidence that *did* support Dr. Smith's opinion.   *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).   For instance, there is no reference to Dr. Powell's treatment notes which stated that claimant had "very severe social phobia," "talks barely above a whisper," and was "a very troubled young lady" (Tr. 409, 421-22). The ALJ also failed to mention that Dr. Smith noted that claimant had "the worst introverted agoraphobic condition that [he had] ever seen" (Tr. 808).  There are numerous accounts within the medical record of claimant seeking treatment at emergency rooms for a rapid heartbeat and anxiety, as well as numerous notations reflecting claimant's tendency to speak softly and social phobia.   The claimant apparently spoke so softly

during the administrative hearing that the ALJ had to prod her to speak up, and the claimant apparently cried while testifying given that the ALJ questioned why the claimant was crying and admonished her to compose herself (Tr. 25-27, 32).  An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly analyze the treating physician opinion of Dr. Vergil Smith as outlined above, the Court concludes that the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 26th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma